UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
C.K. *through his next friend P.K.*, C.W. *through her next friend P.W.*, *for themselves and those similarly situated*, C.X., *through her next friend P.X.*, C.Y., *through his next friend P.Y.*, *for themselves and those similarly situated*,

                *Plaintiffs*,

       -against-

JAMES V. MCDONALD, *in his official capacity as the Commissioner of the New York State Department of Health*, and ANN MARIE T. SULLIVAN, *in her official capacity as Commissioner of the New York State Office of Mental Health*,

                *Defendants*.
------------------------------------------------------------------------X

**ORDER**
22-CV-1791 (NJC)(JMW)

**WICKS**, Magistrate Judge:

      As the discovery deadline draws near, Plaintiffs seek the depositions of two New York state Commissioners, which Defendants strenuously oppose. As such, the latest applications before the Court are: (i) Plaintiffs' motion to compel (ECF No. 57), which is opposed by Defendants (ECF No. 61); and (ii) Defendants' motion for protective order to preclude the depositions of OMH and DOH Commissioners (ECF No. 58), which is opposed by Plaintiffs (*See* ECF No. 60.) At bottom, the parties are at an impasse regarding Plaintiffs' request to take the depositions of Commissioner McDonald and Commissioner Sullivan. (*See* ECF Nos. 57-28, 60-61.) For the following reasons, Plaintiffs' motion to compel the depositions of both Commissioners (ECF No. 57) is granted and Defendants' motion for a protective order to preclude their depositions (ECF No. 58) is denied.

## BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background of this case, as outlined in the undersigned's Memorandum and Order dated June 20, 2023. (ECF No. 49.)[1] As such, only the factual and procedural background relevant to the instant motions is discussed below.

Plaintiffs commenced this putative class action seeking declaratory and injunctive relief and asserting various causes of action against Defendants related to New York State's alleged failure to provide mental health services to Medicaid-eligible children.  (*See* ECF No. 34.) Plaintiffs claim that Defendants have violated the Early and Periodic Screening, Diagnostic, and Treatment Services provisions of the Medicaid Act, 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C § 1396a(a)(43); 42 U.S.C. § 1396d(a)(4)(B); 42 U.S.C § 1396d(r), Reasonable Promptness provision of the Medicaid Act. 42 U.S.C. § 1396a(a)(8), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq*., Section 504, 29 U.S.C. § 794, and 42 U.S.C. § 1983. (*Id*.)

Plaintiffs are four minors proceeding under pseudonyms and each through their "next friend."  (ECF No. 34.)  Defendants are James V. McDonald ("McDonald"), in his official capacity as Commissioner of the New York State Department of Health ("DOH")[2], and Ann Marie T. Sullivan ("Sullivan"), in her official capacity as Commissioner of the New York State Office of Mental Health ("OMH").  (*Id*.; *see also* ECF Nos. 52, 58.)  Plaintiffs challenge the scope and nature of services provided by the State of New York, specifically the intensive home

---

[1] The undersigned's Memorandum and Order was adopted by District Judge Brian M. Cogan on July 6, 2023. (Electronic Order dated July 6, 2023).
[2] Commissioner McDonald joined DOH in July of 2022, and served as Acting Commissioner effective January 1, 2023, before being confirmed on June 10, 2023. (ECF No. 58.) He replaced former-named Defendant in this suit and former Commissioner of the DOH, Mary T. Bassett. (ECF No. 43.)

and community-based mental health services provided to Medicaid-eligible children (*e.g.*, Early and Periodic Screening, Diagnostic, and Treatment), and Plaintiffs highlight, *inter alia*, the alleged issues around the access to, and availability of, these services within the state. (ECF No. 34.)

On June 20, 2023, the Court ordered all "discovery (including completion of limited depositions as necessary based on document produced after initial depositions were taken)" to be completed by March 8, 2024. (ECF No. 49.) On October 2, 2023, the parties filed a Joint Status Report, advising the Court that as of that date, Plaintiff had conducted depositions of three 30(b)(6) witnesses, five fact witnesses who are senior personnel employed by the Defendant agencies, and one third-party witness. (ECF No. 51.) The parties further advised that "three additional fact depositions of senior personnel employed by the Defendant agencies were scheduled to take place on or before the October 12, 2023, deadline, and another 30(b)(6) deposition regarding a data set produced by Defendants will take place on October 13, 2023." (*Id*.)

On November 16, 2023, Plaintiffs filed their Motion to Certify Class (ECF No. 52), and related Motion to Seal (ECF No. 55.)[3] On November 29, 2023, the parties' submitted another Joint Status Report, advising the Court that "[s]ince the October 2, 2023 Joint Status Report, Plaintiffs have conducted the depositions of three additional fact witnesses and one additional witness identified by Defendants. . . [and,] [i]n total, Plaintiffs have conducted eight depositions of fact witnesses (who are senior personnel employed by the Defendant agencies) and one deposition of a third-party witness." (ECF No. 56.) The parties further specified that "Plaintiffs have examined four witnesses identified by Defendants in response to Plaintiffs' Rule 30(b)(6)

---

[3] Those motions are *sub judice* before the Hon. Nusrat J. Choudhury.

3

deposition notices[,] [and] Defendants have conducted depositions of three Next Friends, and intend to take the deposition of one more Next Friend prior to March 8, 2024." (*Id*.) The parties noted Plaintiff had "requested to take the depositions of two additional fact witnesses who are named as Defendants in their official capacity in this case[,]" McDonald and Sullivan, and the Parties held a meet and confer on November 27, 2023 to discuss Plaintiffs' request, but "were unable to resolve the matter." (*Id*.)

On December 1, 2023, Plaintiffs filed the instant motion to compel the depositions of Commissioner McDonald and Commissioner Sullivan (ECF No. 57.) That same day, Defendants filed their motion for a protective order to preclude the depositions of the Commissioners. (ECF No. 58.) On December 4, 2023, Judge Nusrat J. Choudhury[4] referred "all non-dispositive motion practice" to the undersigned. (*See* Electronic Order Dated December 4, 2023). Plaintiffs filed their opposition to Defendants' motion for a protective order on December 7, 2023 (ECF No. 60), and that same day, Defendants filed their response in opposition to Plaintiffs' motion to compel (ECF No. 61). On December 13, 2023, Judge Choudhury extended the deadline for all discovery to be complete by June 17, 2024, and noted that "all non-dispositive motion practice . . . remains referred" to the undersigned. (Electronic Order dated December 13, 2023.)

## THE LEGAL FRAMEWORK

### A. Motions to Compel Depositions

Pursuant to Fed. R. Civ. P. 26:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

---

[4] On October 11, 2023, the case was reassigned to District Judge Nusrat Jahan Choudhury. (*See* Electronic Order dated October 11, 2023.)

4

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Moreover, "[t]he party seeking the discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92-CV-8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see also Mandell v. The Maxon Co., Inc.*, No. 06-CV-460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance."). To that end, the discovery sought by the parties must be, as stated by Rule 26, proportional to the needs of the case, taking into consideration such aspects as the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of the information sought to the asserted claims or defenses. *Sibley v. Choice Hotels Int'l*, No. 14-CV-634 (JS)(AYS), 2015 WL 9413101, at *2–3 (E.D.N.Y. Dec. 22, 2015).

Since December of 2015, "Rule 26 has defined the scope of discovery to consist of information that is relevant to the parties' 'claims and defenses.'" *Pothen v. Stony Brook Univ.*, No. 13-CV-6170 (JFB)(AYS), 2017 WL 1025856, at *2 (E.D.N.Y. Mar. 15, 2017). "Thus, the discretionary authority to allow discovery of 'any matter relevant to the subject matter involved in the action' has been eliminated," and permissible discovery under Rule 26 must be relevant "to any party's claim or defense," and that means "proportional to the needs of the case." *Id.* at *3 (citing Fed. R. Civ. P. 26(b)(1)). Proportionality goes "hand-in-hand" with relevance. *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS)(AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29,

5

2020). That is, the more relevant the information sought is, the less likely the Court would find the subject discovery disproportionate. *Id.*

It is beyond peradventure that "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

With respect to depositions specifically, the outer limit of the number of depositions is clear by rule: each party may conduct up to ten depositions without leave of the court. *See* Fed. R. Civ. P. 30(a)(2)(A)(i). Parties cooperating with each other in discovery, however, may agree amongst themselves to go beyond that prescribed limit. However, where, as here, the parties cannot agree on altering the limit of depositions, the party seeking the additional depositions must obtain leave from the Court. *See Raba v. Suozzi*, No. cv-061109 (DRH) (AKT), 2006 WL 8435603, at *1 (E.D.N.Y. Nov. 17, 2006) (citing Fed. R. Civ. P. 30(a)(2)(A)) ("Absent an agreement among the parties, a party must obtain leave of the court before taking any additional depositions" beyond ten.) "The purpose of Rule 30(a)(2)(A) is to enable courts to maintain a tighter rein on the extent of discovery and to minimize the potential cost of [w]ide-ranging discovery." *Walters v. T&D Towing Corp.*, No. cv 17-0681 (AKT), 2020 WL 7024350, at *1 (E.D.N.Y. Nov. 27, 2020) (quoting *Sigala v. Spikouris*, No. 00-cv-0983, 2002 WL 721078 at *3 (E.D.N.Y. Mar. 7, 2002) (internal quotation marks and citation omitted)). The rule was "enacted to control discovery costs and prevent harassment or undue delay." *Gross v. Bare Escentuals, Inc.*, No. 03-civ-3089 (RLC), 2006 WL 3161386, *1 (S.D.N.Y. Oct. 30, 2006). The number of

depositions, like use of all discovery devices, is of course to be considered through the lens of proportionality.

Before seeking permission to take additional depositions beyond the ten, courts have generally insisted that the movant exhaust the allowable ten first. *In re Actos Antitrust Litig.*, 2022 WL 16722235, at *2 (noting that leave is generally not granted "to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right . . . or the number stipulated"). This is true not only in this Circuit. *See, e.g.*, *Jones-Walton v. Villas at Lake Eve Condo. Ass'n, Inc.*, No. 6:15-CV-995-ORL-22TBS, 2016 WL 6071736, at *2-3 (M.D. Fla. Oct. 17, 2016) (denying motion to expand depositions as premature).

Rule 26(b)(2)(C) expressly sets forth the factors that the court may consider when a party seeks to exceed the ten-deposition limit implemented by Rule 30(a)(2)(A). *In re Actos Antitrust Litig.*, 2022 WL 16722235, at *1. Pursuant to Rule 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule" when the court determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

It is the movant's burden "to show the need for the additional depositions, but counsel's judgment about how many depositions it needs is entitled to a good deal of deference." *United States v. Town of Oyster Bay*, No. cv-142317 (ADS) (SIL), 2016 WL 11265542, at *1 (E.D.N.Y. May 10, 2016) (internal quotation marks and alterations omitted). However, just because counsel

believes a witness "might have discoverable information," does not in and of itself give rise to an unfettered right to depose that person. *Commodity Futures Trading Comm'n v. Commodity Ind. Grp., Inc.*, No. 05 civ. 5741 (HB), 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005); *see also Raba*, 2006 WL 8435603, at *1 ("The mere fact that there are several individuals who may possess relevant information does not necessarily entitle a party to examine each of them."). It is within the court's discretion "to allow more than ten depositions if the party who is seeking discovery has shown why it is necessary." *Commodity Ind. Grp., Inc.*, 2005 WL 3030816, at *1. Some courts have required a "particularized need" be shown to justify additional depositions. *See, e.g., Scanlan v. Potter*, No. 05-CV-0291, 2006 WL 1207748, at *1 (D. Vt. May 4, 2006) ("[The] party seeking . . . more depositions must make a particularized showing.").

### B. Motions for a Protective Order

Parties seeking cover from discovery may avail themselves of a motion for a protective order which, in effect, is the flip side of a motion to compel. Rule 26(c) affords protection for abusive or embarrassing discovery, providing that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause"). The burden is on the party seeking issuance of the order to show "good cause" through "particular and specific facts" as opposed to "conclusory assertions." *Rofail v. United States*, 227 F.R.D. 53, 54–55 (E.D.N.Y. 2005).

"If the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Id.* at 55. "Because of the interest in broad discovery, the party opposing the discovery of relevant information, whether through a privilege or protective order, bears the burden of showing that based on the balance of interests the information should not be disclosed." *Fowler-Washington v. City of New York*, No. 19-CV-6590 (KAM)(JO), 2020 WL 5893817, at *3 (E.D.N.Y. Oct. 5, 2020) (internal quotation and citation omitted).

It is with these principles in mind that the Court considers both motions.

## DISCUSSION

The parties' primary dispute is not over the number of additional depositions Plaintiff is requesting,[5] but rather revolves around whether the depositions of the specific individuals requested – Commissioner McDonald and Commissioner Sullivan – should be permitted, in light of the standard governing depositions of "high ranking government officials" articulated in the Second Circuit's decision in *Lederman v. N.Y.C. Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013). (ECF Nos. 57-58, 60-61)

*Lederman* stands for the proposition that "high ranking government officials" should not be "subject to depositions[,]" as these officials "have greater duties and time constraints than other witnesses," and, "[i]f courts did not limit these depositions, such officials would spend an inordinate amount of time tending to pending litigation." *Marisol A. by Forbes v. Giuliani*, No. 95 Civ. 10533, 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998); *Lederman*, 731 F.3d at 203; *cf. Markowitz v. Precipart Corp.*, 2022 WL 1508638 (E.D.N.Y. Apr. 15, 2022) (apex deposition of high-ranking corporate executives given special scrutiny by the courts).

---

[5] To date, Plaintiffs have already taken the depositions of nine fact witnesses and four additional witnesses designated by Defendants under Rule 30(b)(6). (ECF No. 57.)

The Second Circuit crafted an exception to this general rule in *Lederman*, requiring a party to demonstrate "exceptional circumstances" to depose a high-ranking official. *Id*. For example, the party must establish: (i) "that the official has unique first-hand knowledge related to the litigated claims[;]" or (ii) "that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Id*.

In *Lederman*, visual artists who sold their work on sidewalks and in public parks sued the New York City Department of Parks and Recreation, challenging constitutionality of revisions to rules governing where "expressive matter vendors" could sell their wares. *Id*. at 201. During discovery, plaintiffs sought to take the depositions of Mayor Bloomberg and former Deputy Mayor Edward Skyler. *Id*. The Second Circuit held plaintiffs did not demonstrate "exceptional circumstances" warranting the depositions of the Mayor and Deputy Mayor because plaintiffs "did not identify with particularity the information they needed, nor did they contend that Bloomberg and Skyler had first-hand knowledge about the litigated claims or that the relevant information could not be obtained elsewhere." *Id*. at 203. Moreover, the Court determined plaintiffs did not show that Bloomberg and Skyler had the information they were seeking from then-Parks Commissioner Adrian Benepe," whom plaintiffs previously deposed and who was a named defendant in the suit. *Id*.

Here, Plaintiffs seek to examine the Commissioners "regarding the policies and practices of their respective agencies that have given rise to the alleged failure to provide adequate mental health services to Medicaid eligible children in New York as alleged in the Amended Complaint." (ECF Nos. 57, 34.) Plaintiffs argue the Commissioners "bear statutory responsibility for these policies and practices, and their understanding as to why these deficiencies have not been addressed, and how they came to exist, is important and relevant." (ECF No. 57.)

10

Defendants argue Plaintiffs fail to establish "exceptional circumstances" justifying the depositions of either Commissioner under *Lederman*, claiming there is no evidence to suggest the Commissioners have first-hand knowledge regarding Plaintiffs' claims, and Plaintiffs can – or already have – obtained the information needed from other "senior personnel" from both agencies.[6] (ECF Nos. 58, 61.)

*First*, as a preliminary matter, the Court notes that Plaintiffs' request for only two additional depositions of named-defendants is reasonable and proportional to the needs of the case, especially in light of this Court's previous scheduling order (ECF No. 49, at 18-19), which "contemplated that fact depositions would be 'substantially completed' by November 16, 2023, and that additional depositions would be permitted until the close of fact discovery on March 8, 2024'" (ECF No. 57), and Judge Choudhury's December 13, 2023 Order extending the March 8th deadline to June 17, 2024. (*See* Electronic Order dated December 13, 2023.)

*Second*, Defendants' reliance on *Lederman* is inapposite, as the plaintiffs' deposition request in *Lederman* is clearly distinguishable from this case. Unlike the Mayor and Deputy in *Lederman*, the Commissioners here are not only named defendants in the lawsuit, but they are Commissioners of the respective agencies whose very policies are being challenged. (*See* ECF No. 34.) In Plaintiffs' Opposition to Defendant's Motion for a Protective Order (ECF No. 60), Plaintiffs further note that "as to many important issues, the witnesses [deposed thus far] did not

---

[6] In their Motion for Protective Order, Defendants note that to date, Plaintiffs have already deposed "Robert Myers (Senior Deputy Commissioner, Division of Community Program Management and Managed Care, OMH); Meredith Ray-LaBatt (Deputy Director, Division of Integrated Community Services for Children and Family, OMH); Sarah Kuriakose (Associate Commissioner, Division of Integrated Community Services for Children and Family, OMH); Emil Slane (Chief Fiscal Officer, OMH); Denise Balzer (Director of Crisis Services, OMH); Colette Poulin (Health Program Director of Children's Health Homes, DOH); Jack Pitera (Chief Health Care Fiscal Analyst, DOH); and Diana Halstead (Medicaid Program Advisor, DOH)." (ECF No. 58 at 1.)

11

know the answers, reflecting additional, appropriate lines of inquiry for the Commissioners." (*Id.*)

For example, Plaintiffs argue that the deposed witnesses: (i) "could not answer questions about the state of current waitlists for relevant services, and were not aware of the number of children projected to receive the services or expected to be eligible for the services, or the number of children currently receiving the services[;]" (ii) "lack[ed] knowledge" as "a result of inadequate systems and information reporting needed to ensure that IHCBS is sufficiently available for New York children enrolled in Medicaid" – "systemic deficiencies" which "are a fair deposition topic for the Commissioners[;]" and (iii) "could not explain how initial provider rates for the relevant services were determined and what analysis (if any) has been done to ensure the rates are sufficient to meet the needs of the population." (*Id.*) To this end, unlike the plaintiffs in *Lederman*, Plaintiffs have shown the Commissioners have or should have first-hand knowledge of Plaintiffs' claims, which was not – and cannot be – obtained from other individuals. As such, Plaintiffs' have shown "exceptional circumstances" warranting the depositions Commissioner McDonald and Commissioner Sullivan, and Defendants have not demonstrated good cause for preventing Plaintiffs from taking the Commissioners' depositions.

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs' motion to compel the depositions (ECF No. 57) is granted and Defendants' cross-motion for a protective order (ECF No. 58) is denied. Plaintiffs are directed to complete the depositions of Commissioner McDonald and Commissioner Sullivan on or before the close of discovery.

Dated: Central Islip, New York
December 13, 2023

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge