## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| C.K. *through his next friend P.K.*; C.W. *through her next friend P.W.*; C.X. *through her next friend P.X.*; C.Y. *through his next friend P.Y., for themselves and those similarly situated*,<br><br>Plaintiffs,<br><br>-v-<br><br>James V. McDonald, *in his official capacity as the Commissioner of the New York State Department of Health;* Ann Marie T. Sullivan, *in her official capacity as Commissioner of the New York State Office of Mental Health*,<br><br>Defendants. | 2:22-cv-01791<br>(NJC) (JMW) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, District Judge:

The named Plaintiffs in this action are four minors, each of whom proceed through their "Next Friend" on behalf of themselves and two putative classes to bring claims against New York State officials for failure to ensure that Plaintiffs and similarly situated children with "mental health conditions who require intensive home and community-based mental health services" receive mental health services as required under federal laws. (Am. Compl. ¶¶ 2–4, ECF No. 34.) Plaintiffs bring claims for injunctive and declaratory relief under: (1) the Medicaid Act, 42 U.S.C. § 1396a(a)(10)(A), § 1396a(a)(43), §1396d(a)(4)(B), § 1396d(r), § 1396a(a)(8); (2) 42 U.S.C. § 1983; (3) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq.* and its implementing regulations; and (4) Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794. (Am. Compl. ¶¶ 213–14, 216–17, 221–29, 231–37.)

Before the Court is the parties' joint motion to certify two proposed classes, extend current

litigation deadlines, and stay litigation activity for three months for the purpose of settlement discussions. (Joint Mot., ECF No. 71.) For the reasons set forth below, the Court grants the joint motion and certifies the parties' agreed upon class definitions, extends the existing litigation deadlines for a period of three months, and enters a litigation stay for a similar period so that the parties can devote their efforts to conducting settlement negotiations overseen by the Court.

## BACKGROUND AND PROCEDURAL HISTORY

On March 31, 2022, Plaintiffs filed a Complaint (ECF No. 1) against Mary T. Bassett, in her official capacity as the Commissioner of the New York State Department of Health and Ann Marie T. Sullivan, in her official capacity as the Commissioner of the New York State Office of Mental Health. James V. McDonald, the current Commissioner of the New York State Department of Health, was automatically substituted for former Commissioner Basset pursuant to Rule 25(d), Fed. R. Civ. P. (Defendants Sullivan and McDonald, and former Defendant Bassett, are collectively referred to as the "Defendants."). On October 31, 2022, Plaintiffs filed an Amended Complaint against Defendants (ECF No. 34), alleging that Defendants' policies and practices fail to ensure compliance with the Medicaid Act, ADA, and RA requirements to timely provide, or arrange for, the provision of intensive home and community-based mental health services for children in New York.

On November 16, 2023, Plaintiffs timely filed a motion for class certification and served expert reports on Defendants in accordance with the schedule adopted by Judge Brian M. Cogan prior to the reassignment of this case to this Court's docket. (ECF No. 52; Elec. Order, July 6, 2023 (adopting discovery schedule set forth in ECF No. 49).) Defendants subsequently moved for an extension of time to complete expert discovery and to file their response to the class certification motion (ECF No. 59), which Plaintiffs opposed (ECF No. 62). After the December 12, 2023 hearing on Defendants' motion for an extension of time, the Court found that Defendants failed to

show good cause for the extension, but nevertheless extended the expert discovery and class certification motion briefing schedule as set forth in Plaintiffs' proposed revised schedule. (Min. Entry, Dec. 13, 2023; ECF No. 62-3.) The new schedule required that: (1) Defendants serve their opposition to the class certification motion and opposing experts reports by February 26, 2024; (2) Plaintiffs serve their reply in support of class certification and reply expert reports by April 29, 2024; and (3) all expert discovery conclude by June 17, 2024. (ECF No. 62-3.)

On January 17, 2024, the Court held a status conference at which the parties reported on their ongoing discussions to resolve Plaintiffs' class certification motion without a court ruling. (Elec. Order, Jan. 18, 2024.) Defendants asked for a four-week extension of the February 26, 2024 deadline to oppose Plaintiffs' motion and serve opposing expert reports, and argued that the opposing expert report deadline applies only to experts procured by Defendants to oppose Plaintiffs' class certification motion, rather than all experts whom Defendants intend to rely upon at trial. (*Id*.) Plaintiffs opposed the request, raising concerns about undue delay, and noting that the Court's discovery deadlines in this case have never explicitly or implicitly bifurcated expert discovery on class certification issues from expert discovery on the merits of Plaintiffs' claims. (*See id*.) At the conference, the parties agreed, however, that if they were to reach a stipulation as to the definition of the two classes proposed by Plaintiffs as well as the facts supporting class certification, the parties would jointly seek a stay of discovery deadlines to permit the parties to engage in settlement negotiations in a process overseen by the Court, which could potentially resolve Plaintiffs' claims. (*Id*.) The parties jointly reported that should the Court agree to oversee a settlement negotiation of this kind, neither party would ask the Court to recuse from adjudicating a bench trial on the merits of Plaintiffs' claims in the event that negotiations fail to lead to a negotiated resolution. (*Id*.) The Court extended the deadlines for briefing the class certification motion and serving opposing and reply expert reports, granting the parties a two-week period of

time to focus on determining whether they could resolve the class certification motion. (*Id.*) According to the extended deadline, Defendants' opposition to the class certification motion and opposing expert reports would be due March 11, 2024, and Plaintiffs' reply to the class certification motion and reply expert reports would be due May 13, 2024. (*Id.*) The Court also made clear that these expert report deadlines apply to *all* expert testimony on which the parties may seek to rely at trial, and not just to expert testimony addressing class certification issues. (*Id.*)

On February 8, 2024, the parties filed the Joint Motion, stipulating to the definition of two classes and requesting an extension of deadlines and a litigation stay to permit the parties to engage in a three-month period of settlement negotiations overseen by the Court. (*See* Joint Mot.; ECF No. 72.) The parties seek certification of the proposed classes under Rules 23(a) and (b)(2), Fed. R. Civ. P., in order to "resolve the litigation efficiently and expeditiously, without needless motion practice." (ECF No. 72 at 2.) The parties state that certification of the proposed classes is in the parties' best interest and stipulate to the facts set forth below. (*See generally* Joint Mot.; ECF No. 72.) The parties agree that none of their stipulations "shall be deemed to constitute a finding of wrongdoing or liability by the Defendants or that any of their alleged actions or omissions violated Plaintiffs' rights under any federal, state, or local law or regulation" and that none of their stipulations "shall be deemed to constitute a waiver by the Parties of any right they may have to seek the modification, alteration, or de-certification of the Plaintiff classes pursuant to Rule 23 of the Federal Rules of Civil Procedure." (ECF No. 72 at 7.)

## STIPULATIONS

The parties agree that the following definitions of two proposed classes meet the requirements for class certification under Rules 23(a) and (b)(2) and that the action may be appropriately litigated as a Rule 23(b)(2) class action:

1. The **"EPSDT Class"** is defined as consisting of all current or future Medicaid-eligible children in New York State under the age of 21 (a) who have been diagnosed with a mental health or behavioral health condition, not attributable to an intellectual or developmental disability, and (b) for whom a licensed practitioner of the healing arts acting within the scope of practice under state law has recommended intensive home and community-based mental health services ("IHCB-EPSDT Services") to correct or ameliorate their conditions.

2. The **"ADA Class"** is defined as consisting of all current or future Medicaid-eligible children in New York State under the age of 21 (a) who have been diagnosed with a mental health or behavioral health condition, not attributable to an intellectual or developmental disability, that substantially limits one or more major life activities, (b) for whom a licensed practitioner of the healing arts acting within the scope of practice under state law has recommended IHCB-EPSDT Services to correct or ameliorate their conditions or who have been determined eligible for HCBS Waiver Services (as defined in the Amended Complaint, ECF No. 34, ¶ 10), and (c) who are segregated, institutionalized, or at serious risk of becoming institutionalized due to their mental health or behavioral health condition.

(ECF No. 72 at 3.) In support of certification of the EPSDT Class and the ADA Class as defined above, the parties stipulate that the term "IHCB-EPSDT Services" includes the following:

1. **Intensive Care Coordination** – an assessment and service planning process conducted through a child and family team that coordinates services across multiple systems that serve the child and family, and manages the care and services they need. This includes assessment and service planning, assistance in accessing and arranging for mental health services, coordinating multiple mental health services, advocating for the child and the child's family, monitoring the child's progress, and transition planning.

2. **Intensive, home-based behavioral health services** – intensive behavioral health services and supports, including individualized therapeutic interventions, provided on a frequent and consistent basis and delivered to children and families in the child's home or appropriate community-based setting.

3. **Mobile Crisis Services** – a response designed to interrupt and ameliorate a crisis episode, wherever the crisis occurs outside of an institutional setting, through crisis intervention and/or resolution, de-escalation, and safety planning. Mobile crisis services work to stabilize the child by providing interventions to minimize or prevent the crisis in the future, with the intent of diverting emergency room visits or inpatient admissions, and/or avoiding other behavior- related disruptions.

(*Id.* at 3–4.)

## DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure governs class action litigation. A plaintiff seeking to bring claims on behalf of a putative class must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These Rule 23(a) requirements are known as numerosity, commonality, typicality, and adequate representation. A plaintiff pursuing a class action must also show that the proposed class meets one of the three conditions of Rule 23(b). Here, the parties seek certification of two proposed classes under Rule 23(b)(2), which allows for class treatment if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. . . ." Fed. R. Civ. P. 23(b)(2); *see also Elisa W. v City of New York*, 82 F.4th 115, 122 (2d Cir. 2023) (setting forth the Rule 23(a) and 23(b)(2) requirements for class certification).

### I.     The Proposed Classes Meet the Rule 23(a) Requirements

The EPSDT Class and the ADA Class meet the requirements for class certification under Rule 23(a) for the following reasons.

First, the number of members of each of the proposed classes is so numerous that joinder of all class members is impracticable, thereby satisfying the requirements of Rule 23(a)(1). *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) ("Numerosity is presumed for classes larger than forty members."). Although the exact number of putative members of the EPSDT Class and the ADA Class are unknown, the parties stipulate that "no fewer than tens of thousands of Medicaid-enrolled children are part of the combined classes as defined." (ECF No.

72 at 4.) Because joinder of tens of thousands of individuals would be impractical, both proposed classes satisfy the numerosity requirement.

Second, the parties' stipulation regarding questions of law common to each proposed class satisfy the commonality requirement of Rule 23(a)(2). In order to demonstrate commonality, the named Plaintiffs "must affirmatively demonstrate by a preponderance of the evidence that there are questions of law or fact common to the class." *Elisa W.*, 82 F.4th at 122–23. The Supreme Court clarified in *Wal-Mart Stores, Inc. v. Dukes* that commonality turns on the ability of the action to "generate common *answers* apt to drive the resolution of the litigation." 564 U.S. 338, 350 (2011). The "glue" that holds class members' claims together is the existence of a question such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 352. The Second Circuit has emphasized that even after *Wal-Mart*:

> [C]laims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members. Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.

*Elisa W.*, 82 F.4th at 122–23 (quotation marks and citations omitted).

Here, the parties have stipulated to numerous common questions of law among the named Plaintiffs and the proposed classes, which satisfy the *Wal-Mart* standard. The common questions among the named Plaintiffs and members of the proposed EPSDT Class include:

(a) whether Defendants' policies and practices violate certain requirements under the Medicaid Act to ensure that the State of New York provides or arranges for the provision of IHCB-EPSDT Services to the Named Plaintiffs and the EPSDT Class; and

(b) whether Defendants' policies and practices violate the Reasonable Promptness requirements of the Medicaid Act[1] in providing or arranging for the provision of

---

[1] Pursuant to 42 U.S.C. § 1396a(a)(8).

7

IHCB-EPSDT Services to the Named Plaintiffs and the EPSDT Class.

(ECF No. 72 at 4.) The common questions among the named Plaintiffs and members of the proposed ADA Class include:

(a)  whether Defendants' policies and practices violate the RA and the ADA's mandate that the Named Plaintiffs and the ADA Class receive IHCB-EPSDT Services and HCBS Waiver Services in the most integrated setting appropriate to their needs;

(b)  whether Defendants' policies, practices, and procedures, or lack or deficiencies thereof, result in the unnecessary institutionalization or serious risk of unnecessary institutionalization of the Named Plaintiffs and the ADA Class; and

(c)  whether Defendants utilize criteria or methods of administration in their Medicaid program and HCBS Waiver Services that otherwise have the effect of discriminating against the Named Plaintiffs and the ADA Class on the basis of their mental health disabilities.

(*Id.* at 5 (noting that "HCBS Waiver Services" are provided "[p]ursuant to Section 1915(c) of the Social Security Act via Waiver# NY.4125, titled the 'Children's Waiver'").) Here, Plaintiffs' claims turn on the impact of Defendants' alleged policies, practices, and procedures. Because "the same conduct or practice by [Defendants Sullivan and McDonald] give[] rise to the same kind of claims from all class members," commonality is satisfied. *Elisa W.*, 82 F.4th at 123.

Third, the named Plaintiffs satisfy the typicality requirement of Rule 23(a). "Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id*. at 128 (quotation marks omitted). Where the claims of a class stem from a single course of conduct, "the commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 564 U.S. at 349 n.5 (alteration adopted) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–158 n. 13 (1982)); *see also Elisa W.*, 82 F.4th at 128.

Here, typicality is satisfied for both the EPSDT Class and the ADA Class. The claims of

the named Class Representatives, like those of the members of the EPSDT Class, are that the named Class Representatives are unable to obtain, or are at risk of not obtaining, IHCB-EPSDT Services. (ECF No. 72 at 5.) These claims arise from Defendants' alleged failure to implement policies and practices that ensure that New York provides, or arranges for, the provision of IHCB-EPSDT Services in compliance with its obligations under the Medicaid Act. (*Id.*) Additionally, the claims of the named Class Representatives, like those of the members of the ADA Class, that they have been unnecessarily segregated, institutionalized, or are at serious risk of becoming unnecessarily institutionalized, arise from Defendants' alleged failure to implement policies and practices that comply with the ADA's mandate that New York provides, or arranges for, the provision of sufficient IHCB-EPSDT Services and HCBS Waiver Services in the most integrated setting appropriate to their needs. (*Id.* at 5–6.) Because the claims of the named Class Representatives and members of each proposed class "stem from [Defendants' alleged] single course of conduct," the commonality and typicality analyses "tend to merge." *Wal-Mart*, 564 U.S. at 349 n.5. The named Class Representatives have thus alleged claims that are typical of the claims of the proposed EPSDT and ADA Classes.

Fourth, the named Class Representatives, C.K., C.W., C.X., and C.Y., and their counsel have been, and are capable of, fairly and adequately representing the interests of the members of the proposed classes. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (quotation marks omitted). "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Id*. "A conflict or potential conflict alone will not, however, necessarily defeat class certification—the conflict must be 'fundamental.'" *Id*. Additionally, "Rule 23(a)(4) requires that plaintiffs demonstrate

that class counsel is qualified, experienced, and generally able to conduct the litigation."
*Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (per curiam).

Both requirements of the adequacy of the named Plaintiffs, who seek to serve as Class
Representatives, are met here, and Defendants stipulate as such. The named Class
Representatives are teenage Medicaid recipients located throughout New York who have
various mental and behavioral conditions requiring mental health care. (Am. Compl. ¶¶ 18–82.)
The Next Friends are Named Plaintiffs' parents, family members, and guardians. (*Id.* ¶¶ 18, 36,
52, 66.) The members of the proposed EPSDT and ADA Classes, along with named Class
Representatives, share an identical interest in attaining the requested injunctive and declaratory
relief to ensure Defendants are complying with their obligations under the Medicaid Act, the
ADA, and the RA to timely provide, or arrange for, the provision of intensive home and
community-based mental health services for children in New York. (ECF No. 72 at 6.)
Additionally, the Next Friends are dedicated to representing the best interests of the four minor
named Class Representatives. (*Id.*)

Finally, Defendants also stipulate to the adequacy of Plaintiff's counsel. The named
Plaintiffs and proposed classes are represented by a team of counsel at Children's Rights, Inc.,
Disability Rights New York, the National Health Law Program, and Proskauer Rose LLP, who
collectively have resources and experience in complex class action litigation, including class
action litigation brought by children seeking to enforce their rights under federal laws allegedly
violated by systemic inadequacies in government services. *See, e.g.*, *Marisol A.*, 126 F.3d at 378
(noting lack of opposition to Rule 23(a)(4) adequacy of class counsel from Children's Rights,
Inc. and affirming district court's certification of a Rule 23(b)(2) class bringing claims to
redress injuries caused by alleged failures in the child welfare system); *cf J.S.X. Through Next
Friend D.S.X. v. Foxhoven*, 330 F.R.D. 197, 215 (S.D. Iowa 2019) (appointing attorneys from

Children's Rights, Inc. and their co-counsel as class counsel); *Tinsley v. Faust*, 411 F. Supp. 3d 462, 485–86 (D. Ariz. 2019) (same). Plaintiffs' counsel have been working together on this matter since at least the commencement of the litigation. Each firm brings different knowledge and expertise that, cumulatively, establish their adequacy to represent the EPSDT and ADA Classes. They have diligently pursued this case, and their submissions to the Court reflect a high degree of skill. Plaintiffs' counsel will thus adequately represent the interests of the proposed EPSDT and ADA classes.

## II.  The Proposed Classes Meet the Requirements for Certification of a Rule 23(b)(2) Class for Injunctive and Declaratory Relief

Finally, the proposed classes meet the requirements for class certification under Rule 23(b)(2) because they seek injunctive and declaratory relief that they allege will benefit all members of both the EPSDT Class and the ADA Class. (ECF No. 72 at 6.) The named Plaintiffs allege that Defendants' policies, practices, and procedures are the cause of their injuries, which they allege can be remedied through injunctive and declaratory relief. (*See id.*; Am. Compl. ¶ 14.) The proposed classes satisfy the requirements of Rule 23(b)(2) because, as the parties agree, the claims of the named Plaintiffs and proposed EPSDT and ADA Classes turn on Defendants' alleged actions, or refusals to act "on grounds that apply generally" to members of each proposed class, such that "final injunctive relief or corresponding declaratory relief is appropriate respecting [each] class as a whole." Fed. R. Civ. P. 23(b)(2); *see Barrows v. Becerra*, 24 F.4th 116, 132–33 (2d Cir. 2022) (affirming certification of a Rule 23(b)(2) injunctive relief class where the "lawsuit [was] predicated on 'acts and omissions' of the Secretary [of Health and Human Services] that apply generally to the class").

### III.     Amended Case Schedule and Stay of Litigation Activity

The parties agree that a three-month extension of expert discovery and class certification motion briefing deadlines in the current case schedule will permit them to engage in settlement negotiations in a process overseen by the Court, which could potentially resolve Plaintiffs' claims. The case schedule is therefore amended as follows:

| Filing/Case Event | Previous Deadline per 1/18/24 Minute Entry, ECF Nos. 64 & 62-3 | New Deadline |
|---|---|---|
| Depositions of OMH and DOH Commissioners to be completed by: | June 17, 2024 | September 17, 2024 |
| Opposing expert reports served on or before: | March 11, 2024 | June 11, 2024 |
| Opposition to class certification served on or before: | March 11, 2024 | June 11, 2024 |
| Joint Status Report filed on or before: | March 12, 2024 | June 28, 2024 |
| Reply expert reports served on or before: | May 13, 2024 | August 13, 2024 |
| Window for taking expert depositions: | After May 13 and before June 17, 2024 | After August 13 and before September 17, 2024 |
| Conclusion of discovery: | June 17, 2024 | September 17, 2024 |

Finally, the Court grants the parties' requested stay of all litigation activity through April 30, 2024, to permit counsel for the parties and staff of Defendants' agencies to concentrate on settlement discussions without the pressure of imminent litigation deadlines.

**CONCLUSION**

For the reasons set forth above, this Court grants Parties' Joint Motion to certify the proposed EPSDT and ADA Classes, extend current litigation deadlines, and stay litigation activity for three months for the purpose of settlement discussions. (ECF No. 71.) The parties are directed to file on ECF a jointly proposed schedule laying out the process for Court involvement in the parties' settlement negotiations by February 28, 2024.


Dated: Central Islip, New York

February 22, 2024


_____/s Nusrat J. Choudhury_____
            NUSRAT J. CHOUDHURY
            United States District Judge

13